UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GERALD VANN, | } |
| Plaintiff, | } } } |
| v. | } Case No.: 2:15-cv-01700-RDP |
| DEWAYNE ESTES, et al., | } } } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on (1) Defendant DeWayne Estes's Second Motion for Summary Judgment (Doc. # 37), and (2) Defendants Samuel Snelson and Cordaro Melton's Motion for Summary Judgment (Doc. # 39). The motions have been fully briefed and are under submission. (Docs. # 38, 40, 43-45, 48). After careful review, and for the reasons explained below, Defendant Estes is due to be granted summary judgment, and Defendants Snelson and Melton are due to be granted summary judgment in part and denied summary judgment in part.

**I.     Factual Summary[1]**

In April 2015, Plaintiff was a convicted prisoner housed in high medium security custody at St. Clair Correctional Facility ("St. Clair").[2] (Doc. # 44-2 at 17-18). He was housed in the P-

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff relies on several witness statements from fellow prisoners to argue that a riot resulted from Defendant Melton's use of force and that Defendants should not have feared for their lives when they used deadly force against him. (Doc. # 44 at 8). Defendants respond that the court should not consider the statements because they were not sworn statements. (Doc. # 48 at 7). As an initial matter, some of the statements were made under oath. (Doc. # 44-3 at 25, 28-31). In any event, the court need not consider this dispute because the inmate statements provide no material evidence in support of either party.

2 dorm at St. Clair. (*Id.* at 42-43). At approximately 5:43 a.m. on April 17, 2015, Lieutenant Ronald Carter of the Alabama Department of Corrections was assaulted and stabbed at St. Clair. (Doc. # 39-2 at 20). (*See also* Doc. # 44-2 at 21-22 (identifying the injured lieutenant as "Lieutenant Carter"); 15-2 at 14 (stating that the assault on Lieutenant Ronald Carter occurred at 5:43 a.m. on April 17, 2015)). Lieutenant Carter was transported to UAB Hospital. (Doc. # 39-2 at 20). Plaintiff has recalled "an unusual hush" in the dining area on the morning of April 17th when he observed Lieutenant Carter walk out of a kitchen. (Doc. # 44-2 at 44-45). Plaintiff left the dining area and returned to his dorm block before the lieutenant's assault occurred. (*Id.* at 45-46).

St. Clair's warden, Defendant Estes, requested that a Correctional Emergency Response Team ("CERT") be dispatched to St. Clair following the stabbing. (Doc. # 15-4 at 4) (page 15 of Estes's deposition). The CERT teams handle disturbances in Alabama state prisons and search inmates' property for contraband on an as-needed basis. (Doc. # 39-2 at 12-13). Defendants Snelson and Melton were members of the CERT team that entered St. Clair on April 17, 2015. (*Id.* at 18-19; Doc. # 39-3 at 9-10). Officials at St. Clair told the CERT team that a lieutenant had been stabbed, and the CERT team entered St. Clair to "lock the cell blocks down" so that the inmates' property could be searched. (Doc. # 39-2 at 20-21). (*See also* Doc. # 15-4 at 9) (page 30 of Estes's deposition). Defendant Estes suspected that an individual assigned to cell block P or Q stabbed the lieutenant because those blocks were eating breakfast when the stabbing occurred. (Doc. # 15-4 at 9) (page 30 of Estes's deposition).

---

[2] There is evidence that Plaintiff had dozens of rule infractions while incarcerated with the Department of Corrections. (*See* Doc. # 15-2 at 3-10) (listing 85 citations and disciplinary incidents for conduct including assault, indecent exposure, possession of contraband, and fighting with a weapon). And, Plaintiff's deposition testimony demonstrates his general disregard for prison rules. (Doc. # 44-2 at 27) ("I break[ ] lots of rules. I do what I feel is comfortable -- if I'm comfortable. I mean, because I know I'm not going nowhere [sic]. I know I'm going to be here for a long, long, long, long, long time."). Having said that, Defendants have not testified that they knew of Plaintiff's disciplinary history or that his disciplinary history or reputation factored into any use of force against Plaintiff.

2

Plaintiff recalls hearing a commotion between inmates in the P-2 dorm and corrections officers, including a warden, before the CERT team entered the P-2 dorm. (Doc. # 44-2 at 62-63). According to Plaintiff's deposition testimony, "Warden Evans" was the warden involved in the verbal dispute. (*Id.* at 63). And, prison records indicate that "Warden Eric Evans" worked at St. Clair.[3] (Doc. # 15-2 at 12) (mentioning Evans in an incident report about the use of force drafted in April 2015). After hearing the commotion, Plaintiff walked out of his cell and escorted another inmate, OC, out of the dorm. (Doc. # 44-2 at 65-67). When he returned to P-2 dorm, other inmates were nervous because Evans had indicated that a riot team would be sent into the dorm. (*Id.* at 67-68). Plaintiff told them that the riot team would not bother anyone if they locked down as ordered. (*Id.* at 68). Plaintiff heard the CERT officers travelling down other hallways, but he was downstairs making a cup of coffee when the CERT officers entered P-2 dorm. (*Id.* at 68-69).

The CERT team entered the P-2 dorm from the upper floor at approximately 10:10 a.m. (Docs. # 15-2 at 12; 39-2 at 23). According to Plaintiff, the CERT team blocked him from travelling from the downstairs area to his upstairs cell because they walked down the stairs two abreast. (Doc. # 44-2 at 69). Plaintiff attempted to appear non-threatening, placed his hands behind his head, and walked towards the staircase so that he could enter his cell.[4] (*Id.* at 69). An unidentified corrections officer grabbed his head and squeezed his eye. (*Id.*). Plaintiff reacted by punching the officer. (*Id.* at 69-70). The corrections officer -- later identified as Defendant Melton -- tackled Plaintiff, placed him in a headlock, and tilted his head upwards. (*Id.* at 70, 73). Then, Defendant Snelson arrived with a stick (described by the parties as a baton). (*Id.* at 71).

---

[3] During his deposition, Plaintiff could not recall whether Defendant Estes entered the P-2 dorm on the morning of April 17, 2015. (Doc. # 44-2 at 131).

[4] Melton denies seeing Plaintiff with his hands behind his head. However, his perception is inconsistent with Plaintiff's testimony, which must be credited for Rule 56 purposes.

Plaintiff wrestled with Melton to loosen his arms so that he could protect his head. (*Id.*). Snelson hit Plaintiff in the head two or three times with the baton. (*Id.* at 71-72). Plaintiff blocked one blow with his right hand and one blow with his left hand. (*Id.* at 72-73). After Plaintiff's head had split open, Defendant Melton released Plaintiff from the lock, grabbed him by the throat, and punched him in the chin. (*Id.* at 71). Plaintiff lost consciousness thereafter, but recalled that other officers hit him in the legs and body with batons before he lost consciousness.[5] (*Id.* at 71, 73).

As Plaintiff lost consciousness, a melee broke out between the inmates in the P-2 dorm and the CERT officers. (*See* Doc. # 39-2 at 28). The inmates attacked the officers with broomsticks and locks tied to belts and socks. (*Id.*). One inmate struck Defendant Melton's head with a broomstick. (Doc. # 39-3 at 14). After using force against several rioting inmates, the CERT officers handcuffed them and transferred them to St. Clair employees for treatment at the infirmary. (Doc. # 15-2 at 12).

---

[5] To say the least, Defendants Snelson and Melton disagree with Plaintiff's account of what occurred on April 17, 2015 in the P-2 dorm. Defendant Snelson has testified that several inmates in the P-2 dorm ignored three or four verbal commands to lock down and congregated on the first floor of the dorm. (Doc. # 39-2 at 22-24). The inmates covered up their hands in their pockets. (*Id.* at 25). After an officer was punched by an inmate, Snelson hit the inmate's lower leg area with a baton and placed him in handcuffs. (*Id.* at 26). The inmates then attacked the CERT officers with broomsticks and locks tied to belts and socks. (*Id.* at 28). According to Snelson, the inmate who threw the first punch attached "Officer Holtzclaw," not Melton. (*Id.*). And, Snelson has recalled that the inmates attacked Defendant Melton with a broomstick and hit him in the head. (*Id.*). Defendant Snelson did not recall seeing Plaintiff on the day of the incident. (*Id.* at 23-24).

Defendant Melton has testified that the confrontation between the CERT officers and the inmates began within 15 to 20 seconds after he entered the cell block. (Doc. # 39-3 at 12). An unknown inmate started the confrontation by punching Melton in the jaw. (*Id.* at 13). Melton responded by punching the inmate in the face. (*Id.* at 13-14). Another inmate then hit Melton in the head with a broomstick. (*Id.* at 14). Melton has denied physically restraining the inmate who punched him. (*Id.*).

At this stage of the proceedings, the court cannot resolve credibility disputes; it must rely on Plaintiff's version of the disputed events and must accept his testimony about the disputed events as credible. *Info Sys. & Networks Corp.*, 281 F.3d at 1224. That is, "[w]here a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012).

Plaintiff has testified that, after being handcuffed, he stumbled out of the cell block and was lined up against a wall. (Doc. # 44-2 at 92). An unidentified St. Clair employee "[slung] him head first into the wall in [his] handcuffs." (*Id.*). Another St. Clair officer picked Plaintiff up and assisted him to the prison's infirmary. (*Id.* at 93). After an examination in the infirmary, paramedics transported Plaintiff and two other prisoners to UAB Hospital. (Doc. # 15-2 at 12). Plaintiff left the infirmary at approximately 11:10 a.m. and exited St. Clair in an ambulance at approximately 11:20 a.m. (*Id.*). UAB Hospital admitted Vann that evening for further care. (*Id.*).

Plaintiff received a large gash on the back of his head that required 39 staples to close. (*Id.* at 72, 114). He suffered from sore ribs due to a kick or a hit in his ribs. (*Id.* at 115). Employees at UAB Hospital told him that he had bruised lungs and ribs following the incident. (*Id.*). His right elbow and right hand swelled up, and he had scars on his right elbow and right hand. (*Id.* at 116-18). He suffered no broken bones. (*Id.* at 118). Prison medical records state that Plaintiff had hematomas on his face and head, along with a small laceration on his knee and injuries on his right hand.[6] (Doc. # 44-3 at 46). Plaintiff was transported to UAB Hospital and admitted for one or two days. (Doc. # 44-2 at 116).

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the

---

[6] Plaintiff has testified that he became infected with Hepatitis C as a result of the assault. (Doc. # 44-2 at 111). His medical records reveal, though, that he tested positive for Hepatitis C in 2010. (Doc. # 15-6 at 2).

5

court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

6

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Analysis

After careful review, the court concludes that Plaintiff's excessive force claim against Defendants Snelson and Melton presents a genuine issue of whether they maliciously used deadly force against him in violation of the Eighth Amendment. In all other respects, however, Defendants are entitled to summary judgment.

#### A. Plaintiff Has Presented a Triable § 1983 Excessive Force Claim Against Defendants Snelson and Melton

Plaintiff's has asserted a § 1983 claim against Snelson and Melton for the beating he alleges to have occurred. (Doc. # 25 at ¶¶ 25-30). Claims of excessive force against prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment.

To establish an Eighth Amendment excessive force claim against a prison official, a plaintiff prisoner must show that the official's actions amounted to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[F]orce is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320-21). In determining whether an application of force was applied maliciously and sadistically to cause harm, the court considers five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 321). The court also may consider an officer's compliance with established prison policies as evidence of the official's good faith. *Id.* at 1376. Upon consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In essence, the court's inquiry boils down to "whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.* at 322.

Defendants Snelson and Melton have invoked qualified immunity as a defense to Plaintiff's excessive force claim. (Doc. # 40 at 5-8). The Eleventh Circuit has determined, though, that the law prohibiting malicious and sadistic uses of force is clearly established. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry. Accordingly, we consider whether [the plaintiff's] allegations make out a violation of his Eighth Amendment rights.

*Id.* The court addresses each of the five *Whitley* factors below, in turn.

### 1. Defendants Snelson and Melton Have Shown a Need for Their Application of Force

Defendants Snelson and Melton argue that their application of force was necessary because Plaintiff disregarded the verbal lockdown orders, punched Melton, and struggled against Melton's chokehold. (Doc. # 40 at 11-14). Plaintiff responds that Defendants did not need to apply deadly force, especially since the larger melee had not started at that time. (Doc. # 44 at 8-9). On this factor, Defendants have the stronger argument. At a minimum, Plaintiff created a disturbance that disrupted the administration of the lockdown when he punched Melton in the face. *Cf. Fennell v. Gilstrap*, 559 F.3d 1212, 1218 (11th Cir. 2009) (explaining that a detainee created a disturbance requiring a use of force when he grabbed an officer's arm and could not be restrained or handcuffed by six officers during a fifteen second altercation). And, even crediting Plaintiff's version of the facts for purposes of this motion, he struggled against Melton's efforts to restrain him after he was tackled to the floor. (Doc. # 44-2 at 71). A reasonable officer could

conclude that some force was necessary to restrain Plaintiff under the facts presented here. *Fennell*, 559 F.3d at 1218.

> **2. There is a Material Issue of Fact Regarding Whether Defendants Used an Excessive Amount of Force to Quell the Disturbance Presented by Plaintiff's Conduct**

Defendants Snelson and Melton argue that it was reasonable for Melton to react to Plaintiff's punch by pushing him to the ground, holding him, and punching him in the face. (Doc. # 40 at 14). Moreover, Defendants insist that it was reasonable for them to use their batons during the subsequent riot because they were being attacked by a larger group of armed inmates. (*Id.*). Plaintiff responds that deadly force was inappropriate under the circumstances because he attempted to comply with the officers' verbal lockdown orders and only struggled with Defendant Melton in order to protect himself. (Doc. # 44 at 9). Even after recognizing the "degree of deference" owed to Snelson and Melton in quelling the disturbance, *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990), the court concludes that there is a material issue of fact as to whether the force used in this situation was excessive.

According to Plaintiff, Defendant Melton held him in a chokehold and exposed his head while Defendant Snelson hit him two or three times in the head with a baton. (Doc. # 44-2 at 70-73). Melton has testified that a strike to an inmate's head is only permitted in situations where deadly force is appropriate. (Doc. # 39-3 at 8-9). He also testified that CERT officers are permitted to use deadly force in riot situations, when two or more inmates are attacking, and when an inmate has stabbed another inmate. (*Id.* at 9). The Department of Corrections's use of force guidelines, submitted under seal, provide additional situations where deadly force is permitted. However, under Plaintiff's version of the events, he struck Melton before the melee started and was wrestled to the ground before the melee started. Then, the officers used deadly

10

force against him after he was wrestled to the ground and before attempting to place him in restraints. Under these circumstances, which the court must accept as true at the summary judgment stage, there is a material issue of fact as to whether Defendants Snelson and Melton applied an amount of force beyond that necessary to handle the disturbance caused by Plaintiff's punch.

### 3. There is a Material Issue of Fact as to Whether Defendants' Perceived Threats to Officer and Inmate Safety Justified the Use of Deadly Force

Defendants point to several facts to support their perception of a threat to their safety. First, they note that a lieutenant was stabbed at St. Clair on April 17, 2015. (Doc. # 40 at 14-15). (*See also* Doc. # 39-2 at 20). Second, they claim that inmates in the P-2 dorm disobeyed verbal orders and indicated that they were ready to fight. (Doc. # 40 at 15). (*See also* Doc. # 39-3 at 18) (Melton's testimony that he observed a crowd of inmates in the dorm with hands in their pockets). Third, they assert that Snelson and Melton reasonably feared for their lives because a melee between CERT officers and inmates occurred after Plaintiff's assault. (Doc. # 40 at 15). (*See also* Doc. # 39-2 at 28; 39-3 at 14). The court agrees with Defendants that a reasonable officer would have perceived a potential threat to his or her health and safety upon entering the P-2 dorm due to the earlier stabbing of Carter and the inmates' refusal to comply with verbal lockdown orders. Having said that, there is a material issue of fact as to whether a reasonable officer would have perceived an imminent threat of death or serious bodily injury on those bases alone, as needed to justify the use of deadly force under the Department of Corrections's use of force guidelines. And, while Snelson and Melton have testified about their fear that the other inmates in the P-2 dorm were armed because they refused to show their hands, accepting Plaintiff's version of the facts as true (for purposes of this motion), a reasonable officer would

11

have observed that Plaintiff was holding his hands behind his head when walking towards the stairwell. (Doc. # 44-2 at 69). Thus, the Rule 56 evidence, as construed in Plaintiff's favor, raises a question as to whether a reasonable officer would not have perceived a threat from Plaintiff justifying the use of deadly force.[7]

### 4. Plaintiff Suffered Severe Injuries

This *Whitley* factor clearly weighs in Plaintiff's favor. Plaintiff suffered a large gash and hematomas on his head, along with hematomas on his face. (Docs. # 44-2 at 74, 114; 44-3 at 46). He also reported bruised lungs and bruised ribs following the assault. (Doc. # 44-2 at 115). Indeed, his injuries were so severe that he was admitted to UAB Hospital and remained in the hospital for one or two days. (Docs. # 15-2 at 12; 44-2 at 116). Defendants deny responsibility for the injuries (*see* Doc. # 40 at 15), but such a determination of responsibility would require the court to address the witnesses' credibility, which the court cannot do under Rule 56.[8] *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012).

### 5. Efforts Were Made to Temper the Severity of the Use of Force

Defendants Snelson and Melton argue that they attempted to temper their use of force by instructing the inmates to go to their cells and withholding any use of force until the inmates attacked them. (Doc. # 40 at 15). Plaintiff responds that the officers made no effort to temper their use of force because they struck him with batons after he effectively had been restrained by

---

[7] The court is not suggesting that Defendants Snelson and Melton lacked grounds to justify the use of deadly force once the melee began and inmates attacked them with weapons. But, under Plaintiff's version of the incident, Snelson struck him with a baton before the melee occurred.

[8] The disputed evidence in the Rule 56 record does not permit a summary judgment finding that the officers could not have reasonably anticipated the severity of Plaintiff's injuries from the level of force they inflicted. *Cf. Fennell*, 559 F.3d at 1219 (observing that an officer could not have anticipated the facial fractures an inmate suffered from a single kick because the officer only kicked the inmate once and did not intend to hit the inmate in the face). Here, Plaintiff has stated that the officers intentionally struck him multiple times in the head with a baton.

12

Melton on the ground. (Doc. # 44 at 10). Both parties have misunderstood the thrust of this *Whitley* factor, which ultimately favors Defendants.

This *Whitley* factor "allows the court to take into account efforts by the police to mitigate the effects of the force that was applied." *Fennell*, 559 F.3d at 1220.

> For instance, in *Cockrell* [*v. Sparks*], the fact that the officers immediately summoned medical assistance for the injured inmate was strong evidence that there was no malicious and sadistic purpose in the use of force. 510 F.3d [1307, 1312 (11th Cir. 2007)]. Conversely, [the Eleventh Circuit] held that a prison guard fails to temper the severity of his use of force when he does not allow a prisoner whom he has pepper sprayed to adequately decontaminate himself. *Danley* [*v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008)].

*Fennell*, 559 F.3d at 1220. Here, the Rule 56 record reveals that St. Clair officials provided Plaintiff with relatively prompt medical care in the prison infirmary. (Doc. # 15-2 at 12). And, paramedics began transporting Plaintiff to a hospital approximately one hour after the assault. (*Id.*). The prompt medical care provided to Plaintiff weighs against the claim that Snelson and Melton maliciously assaulted him for the purpose of causing pain. *See Fennell*, 559 F.3d at 1220 ("The immediate offer of medical assistance shows an effort to temper the severity of the use of force.").

### 6. The Bottom Line

In this case, some of the *Whitley* factors weigh in favor of each side. On the one hand, the officers entered a dangerous environment in which a corrections officer had recently been stabbed, faced resistance when locking down the prison, reasonably suspected that some of the inmates in the P-2 dorm were armed, and were entitled to use some degree of force to subdue Plaintiff after he physically assaulted an officer. On the other hand, according to Plaintiff's testimony (which the trier of fact may or may not credit), the officers used deadly force against him after he had attempted to comply with their orders by walking towards his cell with his

13

hands above his head, he was pinned on the ground by an officer when deadly force was applied, and the officers made no attempt to restrain him by means other than deadly force. Ultimately, because the officers used deadly force against Plaintiff (in a situation where there is a material issue of fact as to whether non-lethal force likely would have ended Plaintiff's resistance) and caused severe injuries to him that required hospitalization, the court concludes that the Rule 56 evidence, viewed in Plaintiff's favor, could reliably support an inference that Defendants Snelson and Melton wantonly inflicted pain on Plaintiff by striking him in the head three times with a baton. *Cf. Whitley*, 475 U.S. at 322. Accordingly, Defendants' motion to dismiss Plaintiff's excessive force claim is due to be denied.

### 7. Plaintiff's Claim for Injunctive Relief is Due to be Dismissed

Defendants Snelson and Melton argue that Plaintiff lacks standing to seek an injunction requiring them to "prepare rules and procedures to prevent a recurrence of the beating of the Plaintiff and to protect him from the unjustified actions of the Defendants." (Doc. # 25 at ¶ 29). (*See* Doc. # 40 at 23-24). Plaintiff has not argued in support of his standing to seek injunctive relief in his opposition brief. (*See generally* Doc. # 44). Therefore, the court concludes that Plaintiff has abandoned his request for injunctive relief. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000). In any event, the court agrees with Defendants Snelson and Melton that there is no continuing irreparable injury for which injunctive relief would be appropriate.

### B. Defendant Estes is Entitled to Summary Judgment on Plaintiff's § 1983 Claim Against Him

In Count II of his Amended Complaint, Plaintiff alleges that Defendant Estes was personally involved in the beating because: (1) he created a policy or custom under which Plaintiff's constitutional rights were violated by failing to adequately respond to the incident;

14

(2) he inadequately supervised the CERT officers; (3) he failed to prevent the incident when he knew or should have known of a substantial risk of harm to Plaintiff; (4) he failed to reprimand or punish the CERT officers after the incident; (5) he failed to enforce the use of force guidelines that governed the CERT officers; and (6) he inadequately trained the CERT officers on the use of force guidelines and other CERT policies. (Doc. # 25 at ¶ 32). In his opposition brief, Plaintiff only argues in support of a § 1983 claim based on Estes's failure to protect him from violence. (*See* Doc. # 43 at 2-5). Thus, the court agrees with Defendant Estes that Plaintiff has abandoned all of his § 1983 claims against Estes except for the failure to prevent/failure to protect claim.[9] (Doc. # 45 at 2). *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (holding that a state law claim was effectively abandoned when a party failed to brief and argue the issue before the district court).

After careful review, the court also agrees with Estes that Plaintiff's failure to protect claim is due to be dismissed. Plaintiff has not shown that Estes violated his Eighth Amendment rights by failing to protect him from a substantial risk of harm because the Rule 56 record fails to show Estes's subjective knowledge about what was occurring in St. Clair's P-2 dorm. "A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis in original) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)). "With regard to the

---

[9] Estes argues that Plaintiff should not be permitted to go forward on the failure to protect theory presented in his opposition brief because he did not present that claim in his Amended Complaint. (Doc. # 45 at 2-3). To the contrary, Plaintiff has alleged a failure to protect theory based on the substantial risk of harm Estes knew or should have known. (Doc. # 25 at ¶ 32(b)). Having said that, Plaintiff has not alleged in the Amended Complaint that Estes went to the P-2 dorm before the incident and observed the tense situation there. (*See generally* Doc. # 25). (*See also* Doc. # 43 at 4) (arguing that Defendant Estes was aware of the situation in the P-2 dorm because the inmates there threatened him and were disrespectful towards him before the CERT officers entered). The court need not decide, though, whether Plaintiff's opposition brief argument is an improper amendment of the Amended Complaint because it fails to present a triable claim in any event.

15

subjective component of the second element—i.e., the defendant's actual knowledge that an inmate faced a substantial risk of serious harm—the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 1099-1100 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Here, Plaintiff's argument misconstrues the deposition testimony in asserting that Defendant Estes entered the P-2 dorm and argued with inmates before the CERT officers conducted the lockdown. Plaintiff testified that "Warden Evans," not Estes, confronted inmates in the P-2 dorm before the lockdown. (Doc. # 44-2 at 63). Therefore, the court cannot conclude that Estes personally observed and was aware of the "explosive situation" in the P-2 dorm before allowing the CERT officers to enter and lock down the cell block. (*See* Doc. # 43 at 4). *See also Caldwell*, 748 F.3d at 1099-1100 (explaining that a plaintiff must show the defendant's awareness of facts that present a substantial risk of harm). Nor can the court conclude that Estes actually inferred a risk of substantial harm from locking down the facility due to the inmates' disrespect and threats towards correctional officers because nothing in the Rule 56 record shows that Estes knew of those incidents. (*See* Doc. # 44-2 at 63-67). *See also Caldwell*, 748 F.3d at 1099-1100 (requiring a plaintiff to show that a defendant actually inferred the risk of harm to an inmate to sustain an Eighth Amendment failure to protect claim). Because Plaintiff cannot show that Estes subjectively knew of a risk of harm created by the "explosive situation" in the P-2 dorm before the lock down, Estes is entitled to summary judgment on Plaintiff's § 1983 failure to protect claim.

    **C.**    **Defendants Snelson and Melton are Entitled to State-Agent Immunity From Plaintiff's Negligence/Wantonness Claim**

In Count III of his Amended Complaint, Plaintiff alleges that Defendants Snelson and Melton negligently or wantonly assaulted him in violation of the prison's use of force guidelines.

16

(Doc. # 25 at ¶¶ 36-38). Snelson and Melton argue for state immunity from the negligence/wantonness claim, to the extent it is brought against them in their official capacities. (Doc. # 40 at 20). And, they request state-agent immunity from any negligence or wantonness claim in their individual capacities because Plaintiff cannot present substantial evidence that they acted willfully, maliciously, in bad faith, or under a mistaken interpretation of law during the incident. (*Id.* at 21-23). In his opposition brief, Plaintiff has not presented argument in support of his state-law claims against Snelson and Melton. (*See generally* Doc. # 44). Because Plaintiff has not argued why these claims should survive summary judgment in his opposition brief, the court finds that he has abandoned any state-law negligence or wantonness claims against Defendants Snelson and Melton. *See Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1325-26.

Alternatively, even if Plaintiff has not abandoned the negligence and wantonness claims by presenting no supporting argument for them in his opposition brief (and, to be clear, he has), Defendants Snelson and Melton are entitled to immunity from the claims in their official capacities. Snelson and Melton, as employees of the Alabama Department of Corrections, are immune from Plaintiff's state-law claims for monetary damages in their official capacities under Article I, § 14 of the Alabama Constitution. *See Latham v. Dep't of Corr.*, 927 So. 2d 815, 820-21 (Ala. 2005) (holding that claims against the commissioner of the Department of Corrections and a prison's warden for monetary damages was barred by the state's sovereign immunity).

Snelson and Melton are also due to be granted state-agent immunity in their individual capacities from the negligence and wantonness claims. In Alabama, a state agent is immune from civil liability in his or her personal capacity when the conduct underlying the claim is based on, among other acts, the agent's exercise of judgment in enforcing criminal laws. *Ex parte*

*Cranman*, 792 So. 2d 392, 405 (Ala. 2000). When a defendant raises state-agent immunity, courts apply the *Cranman* rule through a two-part burden-shifting analysis. *Fleming v. Dowdell*, 434 F. Supp. 2d 1138, 1163 (M.D. Ala. 2005), *aff'd*, 182 F. App'x 946 (11th Cir. 2006). The defendant bears the initial burden of demonstrating that the plaintiff's claims arise from a function that would entitle him or her to immunity. *Id.* If the defendant satisfies that burden, the burden shifts to the plaintiff, who, in this case, must establish that the defendants "acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003).

Applying this two-part analysis, the Rule 56 record shows that Snelson's and Melton's conduct falls within the scope of Alabama's state-agent immunity because they exercised judgment in enforcing criminal laws by guarding a prison. *Ex parte Dixon*, 55 So. 3d 1171, 1178-79 (Ala. 2010) (holding that an officer guarding a jail performs a law enforcement duty). As a matter of law, Plaintiff's allegations of negligent and wanton conduct by Defendants Snelson and Melton cannot overcome Defendants' entitlement to state-agent immunity. *Giambrone*, 874 So.2d at 1057 ("The immunity afforded State agents who exercise their judgment . . . is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."). Plaintiff has not raised any assault or battery claims in his Amended Complaint, and thus the court cannot consider whether any such claim would survive Defendants' invocation of state-agent immunity. For all these reasons, the court finds that, even if the state-law claims were not abandoned by Plaintiff, Defendants Snelson and Melton are entitled to state-agent immunity for the claims.

## IV. Conclusion

At trial, a jury might well conclude that Defendants offer a more credible version of what occurred on April 17, 2015, that Plaintiff was part of the group of rioting inmates, and that Defendants actually did not apply deadly force to restrain Plaintiff from rioting. Or, a jury might find that Defendants reasonably used significant (or even deadly) force against Plaintiff because the melee began as officers tried to restrain Plaintiff. Alternatively, the jury could find that Defendants reasonably responded because Plaintiff was the aggressor. And, to be clear, the court makes no finding that Defendants misused deadly force. Rather, the court concludes that Plaintiff's excessive force claim rises or falls on the credibility of the parties' testimony. And, at summary judgment, the court cannot discredit Plaintiff's testimony. Therefore, Plaintiff's excessive force claim must go to trial.

For the reasons explained above, Defendant Estes's motion for summary judgment is due to be granted. Defendants Snelson and Melton's motion for summary judgment is due to be granted in part and denied in part. Counts II and III of the Amended Complaint are due to be dismissed with prejudice; Count I of the Amended Complaint is due to proceed to trial against Snelson and Melton. Plaintiff's request for injunctive relief against Defendants is due to be dismissed as abandoned. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 6, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE